Takky ZUBEDA, a/k/a Rose Zubeda,
Takky Mwishehe, A # 78 824
095 Petitioner,

v.

Kenneth ELWOOD, District Director,
Immigration and Naturalization
Service, et al.  Respondents.

No.  CIV.A.02–8394.

United States District Court,
E.D. Pennsylvania.

Jan. 24, 2003.

Jonathan H. Feinberg, Kairys, Rudov-
sky, Epstein & Messing, LLP, Philadel-
phia, PA, for Petitioner.

Karen Lee Tomlinson, U.S. Attorney's Office, Philadelphia, PA, for Respondents.

### MEMORANDUM AND ORDER

SCHILLER, District Judge.

On November 8, 2002, Takky Zubeda ("Ms. Zubeda" or "Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging her continued detention in York County by the Immigration and Naturalization Service ("INS") pending the final outcome of removal proceedings. In her petition, Ms. Zubeda seeks a bond hearing before an Immigration Judge. For the reasons set forth below, I deny her petition.

### I. BACKGROUND

In December 2000, Ms. Zubeda attempted to illegally enter the United States at Newark International Airport by means of a false passport. (Gov.'s Resp. to Pet., Ex. 1 at "Page 1".) Under section 235(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(a)(1) (2002), Ms. Zubeda, as an alien "who arrive[d] in the United States" was deemed "an applicant for admission." 8 U.S.C. § 1225(a)(1). As an applicant for admission, she was required to undergo an inspection by an immigration officer. See 8 U.S.C. § 1225(a)(3). During the inspection, the immigration officer determined that Ms. Zubeda was inadmissible because she had presented a false passport. See 8 U.S.C. § 1182(a)(7)(A)(i) (stating that immigrant not possessing valid, unexpired passport is inadmissible).

Under the INA, Ms. Zubeda ordinarily would have been removed from the United States without further hearing or review pursuant to an order for her immediate removal. See 8 U.S.C. § 1225(b)(1)(A)(i). However, indicating that she was fleeing horrific conditions in the Democratic Republic of Congo, Ms. Zubeda expressed a fear of persecution and an intention to apply for asylum, and she was excepted from immediate removal. See 8 U.S.C. § 1225(b)(1)(A)(ii). After an asylum officer interviewed Ms. Zubeda and found that she had a credible fear of persecution, the INS deferred Ms. Zubeda's removal and detained her while her asylum application was pending. See 8 U.S.C. §§ 1225(b)(1)(B)(ii) and 1225(b)(2)(A).

Ms. Zubeda's case was then referred to an Immigration Judge for consideration of her application for asylum. See 8 C.F.R. § 235.6(a)(ii); 8 C.F.R. § 208.30(f). The Immigration Judge vacated her expedited removal order. The INS appealed this decision to the Board of Immigration Appeals ("BIA"), which vacated the decision of the Immigration Judge. Subsequently, Ms. Zubeda petitioned the Third Circuit for review of the BIA's ruling, and the matter is currently before the court of appeals. While Ms. Zubeda has been detained, she has sought to be paroled, but the INS has found that she is not suitable for release. In the matter before the Court, Ms. Zubeda seeks an order directing an Immigration Judge to hold a bond hearing to determine whether her parole is appropriate.[1]

### II. DISCUSSION

#### A. Jurisdiction

The government contends that I should decline to exercise jurisdiction over Ms. Zubeda's petition. Specifically, the government notes that Ms. Zubeda is challenging her removal in a case before the

---

1. In the alternative, Ms. Zubeda seeks an order directing the INS to release her from its custody. Because I conclude that Ms. Zube-da is not entitled to a bond hearing, I also conclude that she is not entitled to release.

Third Circuit, and the Third Circuit has inherent authority to release an alien from INS detention. *See Mapp v. Reno,* 241 F.3d 221, 231 (2nd Cir.2001) (holding that federal courts have inherent authority to admit to bail habeas petitioners challenging INS detention pending disposition of merits of their petitions). In order to further the interests of judicial economy, the government argues, I should abstain from ruling on Ms. Zubeda's petition, and Ms. Zubeda should move the Third Circuit for her release.

■■■■ I disagree with the government for two reasons. First, as a general matter, a district court's discretionary decision not to exercise its jurisdiction is "an extraordinary and narrow exception to the duty ... to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified ... only [in] exceptional circumstances ...." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*quoting County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). Second, the power of a federal court to grant a writ of habeas corpus under § 2241 extends to any prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (2002); *see also Perez v. Elwood,* 294 F.3d 552, 555 (3d Cir.2002) (holding that § 2241 grants district courts authority to issue writs of habeas corpus in cases involving detainees held under United States' authority). Moreover, habeas petitions filed by individuals in Ms. Zubeda's position must be filed in a district court. *See Cruz–Aguilera v. INS,* 245 F.3d 1070, 1075 (9th Cir.2001) (holding that district court alone has original jurisdiction over habeas petition claiming detention by INS is illegal). Thus, although Ms. Zubeda may be able to ask the Third Circuit for her release, she would not be able to raise her constitutional challenges to her detention before the appellate court. For these reasons, I deny the government's motion for dismissal of this action and reach the merits of Ms. Zubeda's petition.

## B. Petitioner's Right to a Bond Hearing

Under section 212(d)(5) of the INA, the Attorney General "in his discretion may parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission into the United States...." 8 U.S.C. § 1182(d)(5). Relying on this statutory authority, the government has taken the position that because Ms. Zubeda is an inadmissible alien, her parole is entirely discretionary.

Ms. Zubeda vigorously disagrees with the government. Notwithstanding the lack of a statutory provision for a bond hearing, Petitioner asserts that Due Process requires such a hearing and cites recent caselaw, including *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), for the proposition that her mandatory detention is unconstitutional. In particular, Ms. Zubeda argues that she has not been provided adequate procedural safeguards, and she should be entitled to make her case for her release on bond before an Immigration Judge.

Responding to Petitioner's arguments, the government notes that the Third Circuit has stated that "[t]he power to exclude aliens is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Ngo v. INS,* 192 F.3d 390, 395 (3d Cir.1999) (*quoting Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206,

210, 73 S.Ct. 625, 97 L.Ed. 956 (1953)). Similarly, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). More pointedly, the government also cites *Zadvydas*, contending that there is a fundamental distinction between those aliens who have been "admitted" into the United States and those who, like Ms. Zubeda, have not. In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231(a)(6), implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States. 533 U.S. at 682, 121 S.Ct. 2491. Writing for the majority, Justice Breyer emphasized that the Court's analysis was confined to those aliens who had been admitted to the United States:

We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question.

\* \* \* \* \* \*

The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.* at 682, 694, 121 S.Ct. 2491 (citations omitted). Despite academic criticism of the distinction—highlighted by Justice Breyer—between those aliens who have entered the country and those who have not yet gained initial admission, see, e.g., Charles D. Weisselberg, *The Exclusion and Detention of Aliens: Lessons From the Lives of Ellen Knauff and Ignatz Mezei*, 143 U. Pa. L. Rev. 933 (1995), recent decisions have made clear that inadmissible aliens, like Ms. Zubeda, are not afforded the same Due Process protections as aliens who have entered the United States. *See Herrero–Rodriguez v. Bailey*, 237 F.Supp.2d 543, 549–50 (D.N.J.2002) (collecting cases). Such decisions are consistent with the view that "[t]he *Zadvydas* Court confirmed that [inadmissible] aliens seeking entry have no constitutional right to be at large in this country," *Pan v. Ashcroft*, Civ. A. No. 02–2712, 2002 WL 1497115, at \*2 (E.D.Pa. July 8, 2002), and therefore no Due Process right to a bond hearing. Accordingly, the Court's reasoning in *Zadvydas* precludes me from agreeing with Ms. Zubeda's argument that Due Process entitles her to a bond hearing before an Immigration Judge.

Furthermore, the other cases upon which Ms. Zubeda relies are inapposite. *See Patel v. Zemski*, 275 F.3d 299 (3d Cir.2001); *Alaka v. Elwood*, 225 F.Supp.2d 547 (E.D.Pa.2002). *Patel* and *Alaka* addressed the scope of protections afforded to aliens who were lawful permanent residents of the United States. The petitioners in two additional cases cited by Ms. Zubeda, *Ngo*, 192 F.3d 390, and *Radoncic v. Zemski*, 121 F.Supp.2d 814 (E.D.Pa. 2000), had resided in the United States for a period of years before being taken into INS custody. Ms. Zubeda, unlike the petitioners in the cases she cites, is an inadmissible alien who has never entered this country, formally or otherwise. In light of this lack of support for Ms. Zubeda's con-

tentions and the reasoning set forth in *Zadvydas,* I conclude that Ms. Zubeda, as an alien who attempted to enter the United States with a false passport, and only when seized raised the issue of asylum, is not entitled to a bond hearing before an Immigration Judge while she is in custody as she challenges the BIA's decision in the Third Circuit.

## III. CONCLUSION

For the foregoing reasons, I deny Ms. Zubeda's Petition for Writ of Habeas Corpus.

### *ORDER*

**AND NOW**, this     day of **January, 2003**, upon consideration of Petitioner Takky Zubeda's Petition for Writ of Habeas Corpus, the Government's Motion For Relief From Order, the Government's Response to the Petition for Writ of Habeas Corpus, and Petitioner's Reply Brief, and for the foregoing reasons, it is hereby **ORDERED** that:

1. The Government's Motion For Relief From Order (Document No. 5) is **DENIED**.

2. Petitioner Takky Zubeda's Petition for Writ of Habeas Corpus (Document No. 1) is **DENIED**.